Mr. Golden. Good afternoon, Your Honors. I'm James Golden. I represent the appellant Gaspar Deviedma. I'd like to reserve three minutes for rebuttal. Okay. Pronounce that name again for me. Gaspar Deviedma. Deviedma, okay. So DevonRobotics writes in its brief on page four, Deviedma cannot demand arbitration because he was not a party to the contract and the arbitration agreement does not include his conduct as COO of DevonRobotics. If both of those clauses were true, Devon would be right that Mr. Deviedma. He is a party to the contract? Excuse me. He is a party to the contract? Yes, yes he is. Which contract? I'll show you how that is. Well, it should be pretty easy if he's a party to the contract to show me how it is. Yes. Are you saying there's something in one of the subsequent contracts that assumed the terms or that related back or that incorporated the original contract that has the arbitration clause in it? The original contract has the arbitration clause in it. Right. But he didn't sign that. He did. That's an easy one. He didn't sign it in his individual contract. He did by the definition in the contract. And the contract and all of the amendments are written in a slightly unusual way in that they all start as a contract between the licensee and the licensor. And then those terms are defined. That's also very important to what it is that the second amendment was about. But in this case, the contract, this is the first contract, is at A297 of the record. It is between licensor and licensee. That's what the first paragraph says. Of course, we don't know who that is. So we have to turn to the definitions. Definitions are on page A299, the third page of the contract, sections 1.24 and 1.25. 1.25 is the licensor, which is the one that more specifically applies, although they're essentially identical. And it says licensor shall mean the company Health Robotics SRL, incorporated in Italy with its principal place of business located at, and then it says this is what's important, and its parents, subsidiaries, affiliates, successors, and or assigns. It's the same definition for licensee. Mr. Davidma is an affiliate. Those two provisions. In his individual capacity? Excuse me? In his individual capacity? Sure. Sure. That's what he's an affiliate? Under what definition of affiliate? The affiliate is not defined in the contract. So what it means, because it's not otherwise defined in the contract, is it means the common English definition of the word affiliate. Well, an affiliate is someone or something that is affiliated with Health Robotics. I love it, Mr. Goldman. It's original. What else could it mean? What else could it mean? I can give you a few things. I mean, an affiliate of a company is not an individual, and I've never come across a definition in corporate law in which an individual has, in their individual capacity, I mean, obviously an individual can have Joe Greenaway LLC or something. Obviously, that would be a corporate entity. But as an individual, you're not an affiliate. I mean, the design manager for Apple is an affiliate of Apple. The design manager. Right. If he's an officer, probably. But, of course, it would depend on what the contract says. Here we have a contract that's written in a particular way that that's what it has to mean. For instance, very importantly, Mr. Bennett is an individual, one of the plaintiffs in the case. He is the owner of all of the Devin entities. He owns the Devin entities individually, not through a corporation, not through an LLC, not through a partnership. Of course he's an affiliate. Can't be any difference because he owns the companies as an individual rather than through an entity. The definition of licensee in the agreement you've just referred to, Mr. Bennett, would be both an owner and an affiliate? He's a parent. Mr. Golden, don't you have a much simpler contract argument if we reach the merits? He's employed under a consulting agreement. A consulting agreement is an amendment to the contract. Oh, of course. So if we reach the merits. That's amazing. We can look to that. But isn't the heart of the issue on appeal whether we've reached the merits, whether there's jurisdiction here? Well, there is the arbitrability, excuse me, there is the jurisdiction issue based on whether it's appealable. Yes. So why didn't you file an application or motion to compel? Well, first I have to say in answering that question, I personally was not involved in the case at the time. Always a real bad way to say this. I can't say why it wasn't done. But I will say that there's no effective difference at all between moving to dismiss a complaint because there's an arbitration clause and making a motion to compel arbitration because the remedy is exactly the same. But how can you say that given the terms of the FAA? Because under Section 4 and under Section 206, which as a result of Section 208 is incorporating the procedures of Section 4, there are very particular procedures that are laid out for an application to compel that are different than might otherwise apply with a motion to dismiss or motion for summary judgment. Where the FAA has specified and used almost as a term of art the application to compel, why would we take something that is not complying with those procedures, is called something different, and ask the court to dismiss the case rather than staying to compel arbitration the same thing? The answer is that there's no effective difference and there's no case that is addressed in this case, no reported case, where that distinction is recognized as being important. Well, in fact, the circuits have taken differing views of how strictly the language of the FAA here should be applied. And the Tenth Circuit, for example, has taken a fairly strict approach as to what this thing needs to be. And it's not a motion to dismiss. There are two Tenth Circuit cases that are addressed. And one is called Grosvenor and the other one is called Conrad. And in Conrad, there was no serious motion to dismiss on arbitration grounds. What happened in Conrad, as determined by what's reported in the opinion, is the defendant moves to dismiss on substantive grounds, and then there were two passing references where they said, oh, yeah, by the way, there's an arbitration clause, this case should be arbitrated. It wasn't a fundamental part of the motion. In Grosvenor, Grosvenor was based on a summary judgment motion. The defendant did not move in the summary judgment motion on arbitration grounds. What the defendant said in Grosvenor is, okay, here's our summary judgment. We're entitled to summary judgment on substantive grounds. Then in the summary judgment motion, the defendant in Grosvenor said, we think we're also entitled to arbitration, but we're not going to make that motion now. We're only going to make that motion later if we lose the summary judgment motion. Because, of course, Grosvenor figured if they won the summary judgment motion, they didn't have to worry about arbitration and the case is over. So they lost the summary judgment motion. The defendant in Grosvenor appealed. On the appeal, wanted to argue the arbitration issue, but the appellate court said, no, the appellate issue wasn't raised in the order that you were appealing to the court. So those are the two tents. Where here did you make the request of the district court to compel arbitration as opposed to simply dismiss the case? The summary judgment brief. What the motion to dismiss and the summary judgment brief said was, dismiss the case and order arbitration. That's what it said. It was not titled, this is a motion to compel arbitration. That is correct. But the effect would have been exactly the same. Well, the effect, and under Section 4 of the FEA, there are specific provisions for notice, for hearing, for discovery, and for trial. Section 4 differs from Section 206. But Section 208 says that you apply the procedures of the title, including Section 4, and our case law has interpreted it that way. Section 4 governs a situation where a party wants to force an arbitration and the other party is sort of not cooperating. They're just throwing up their hands, saying, we won't. So Section 4 contemplates an initial pleading where you're saying, I'm filing a pleading in court. Order that party to participate in arbitration. 206, which is really what should have been done in this case, the defendant says in answer to a complaint, the defendant files a motion to compel arbitration. That would be, I guess, a 12B motion. It would be part of a motion to dismiss the case. In this instance, the lawyers representing DeVita didn't call it that. I can't tell you exactly why, other than the result would have been the same to order arbitration. Again, Section 208 provides that those procedures in Section 4 apply to 206, if they're not inconsistent with the title. So how can you say that that is the functional equivalent or that we shouldn't be looking to the express language and requirements that are provided by the FAA in deciding whether the right motion was used here, whether there is jurisdiction over interlocutory appeal from whatever it is that happened below? And the answer is because there are two parts. One, the result is the same. And the second is that there is no case that says that the arbitrability of an unsuccessful motion to affect arbitration, I won't use the word compel, should determine on how you title the motion. Can you address Bombardier and the D.C. Circuit? I recognize the name, but that's not one that I'm specifically familiar with. I don't recall in all of the work that I did on the brief, I don't recall that there was any case that turned on the title. Well, putting aside the case itself, the merits of the issue are really where Congress has specified in Section 16A1 the five categories of orders that you can take an interlocutory appeal from, an interlocutory appeal being somewhat exceptional. Shouldn't we be looking to those particular categories and not other things that Congress chose not to specify? It could have specified orders on motions to dismiss or orders generally that are adverse to arbitrability or orders on summary judgment, but it didn't. It specified particular things like the application to compel. Again, with reference to that being a term that is being used in the FAA under 206. An application under 206, which is different than an application under the rules providing for summary judgment. That is what Section 16 of Title IX says. I understand that. But in this instance, the motion that was made was titled the motion to dismiss. One of the arguments asserted in the motion to dismiss, as well as the motion for summary judgment, was that the claims against Mr. Davidma should be arbitrated. What the motion sought was the dismissal of the case or an order in some form directing that the case be arbitrated. It's not an instance, and of course these are the reasons for the procedural requirements that Your Honor refers to under Section 4 and Section 206. The reason is so that the respondents to the motion have appropriate notice and understand what the motion is about. There's no question here that both the plaintiffs and, of course, the district court understood that Mr. Davidma was moving to, again, I'll use the word affect, not compel, because that's not what it was titled, to affect an arbitration. Let's take it the next step. Since we now know that that was Mr. Davidma's intent at that time, there was no interlocutory appeal filed after the motion to dismiss, and lawyers on his behalf engaged in extensive discovery, motion practice, et cetera. Some considerable period of time now we then get to a motion for summary judgment and at that time ask for arbitration, and we find ourselves here now. Why isn't the failure to have followed up at the motion to dismiss stage with an interlocutory or seeking an interlocutory appeal at that time now fatal to his claim? Why doesn't waiver take effect? There are several reasons why there's no waiver. The first is with regard to asserting the right to arbitrate, it was made at the two times that he could have done it. He did it in response to a motion to dismiss and as part of a motion. But after this extensive discovery, who's in the question? There are 26, 27 depositions here. Is that right? There was a lot of discovery, and if the case were arbitrated, all of the discovery would be available for use in the arbitration. There's no prejudice or harm to anybody. There's not even any waste. It all would be visible in this substantive proceeding. I get that, but wasn't he obligated to seek the remedy? He didn't make a motion to compel. We've been through that. I don't want to go over it again. My real question is he did not seek the interlocutory order. I don't need to know why. I just want to know why doesn't that failure operate to preclude him from seeking it at this stage? Because the statute that permits an interlocutory appeal from an unsuccessful attempt to get arbitration does not require that you make it the first time or the second time or the third time. There's no limitation in the rule. The rule says you can appeal from an unsuccessful attempt to obtain arbitration, and the waiver of that would apply when the appeal time runs for any of those subject orders. That's why there's an appeal period. It was 30 days to appeal. He chose not to appeal the unsuccessful attempt to arbitrate on the motion to dismiss, proceeded, as the district court noted, persistently raised the issue a second time when he was permitted to, was unsuccessful a second time. He has another 30 days to appeal, and he did. But his argument is these issues, because he's an affiliate, now I didn't understand that before, but because he's an affiliate, these issues need to be resolved in an arbitral setting. So having participated for whatever it was, 18 months, 27 positions, whatever the exact number is, in extensive litigation, as an equitable matter, why isn't that waiver? Because for there to be waiver under equity, there has to be some kind of prejudice as a result of some action or inaction by a party. And there's no prejudice in this case. All there is is the conduct of discovery. Time and money is not prejudice in this instance? No, because the same discovery would have occurred in the arbitration, and it's all usable in the arbitration. Well, that's a matter of perspective, right? I mean, the discovery devices available in an arbitration setting are much less, much more constricted than they are in a federal district court setting. That's right. And most of the discovery was conducted by the plaintiffs. So to the extent that anybody benefits from the fact that there was more discovery conducted, because the discovery period was while the case was in court, the plaintiffs benefit from that. They weren't prejudiced by it. I think we saved some time for rebuttal. Yes, I did. Okay. Mr. Sams. Good afternoon, Your Honors. My name is Gary Sams, Grobermeyer, Reverend Maxwell and Hippel, and I represent Devon Robotics and the appellees in this matter. I think this court doesn't even get to the second issue in this case, which is was the motion to dismiss really a motion to compel, or should it have triggered something? The whole issue comes down to whether or not there was even jurisdiction or the actions fell under the jurisdictions, as some of you have already pointed out. Mr. DeVita was not a party to the arbitration agreement between Devon and HRSL. To the extent that he was involved as an employee or representative or officer or affiliate of HRSRL, he was, in fact, also working, as Judge Joyner clearly illuminated in his opinion, for Devon Robotics in not the best of business decisions probably, but in fact he was acting as, for lack of better words, Judge Joyner said, a double agent. He hired and fired employees for Devon Robotics. He negotiated with other companies for other deals for Devon Robotics. He took numerous actions on behalf of Devon Robotics. They don't contest that he wasn't the COO of Devon Robotics. Where does your breach of fiduciary duty claim arise if he's not an employee? If he is not an employee, there are no magic terms, as Your Honor is aware, with respect to it, and it depends on the special relationship that exists. And because of the joint venture – Sounds like you're bleeding into the affiliation argument. Well, it's not quite what I was going on. The papers say he's a COO, but he's not an employee. He was put there presumably with the acquiescence of Devon, you know, have access to capital, and you have to have access to Mr. DeVima. So where does this arise from? Is it the Second Amendment? No, I don't think the contract defines the fiduciary duty. The actions and roles played by the parties define the special duty. In a situation where somebody creates a fiduciary relationship, and it may be created by contract or a respondent superior employment situation, but in a situation like this where they were working together, Devon was paying HRSL $250,000 a year for Mr. DeVima and another employee to work on the West Coast. Is he an independent contractor? I want to know what he is. He was the COO of W8s. That creates this breach of fiduciary. Yeah. I don't think compensation is the sole issue you can look at to determine his function for us. We provided his health insurance. He got expenses. And he acted as our key guy. As the CFO testified before Judge Joyner, essentially, he said, he was the go-to guy for all things Devon Robotics. He was running the company, making all the decisions. That creates a fiduciary relationship. You can call him whatever you want, but it is the roles and the actions that he took, the knowledge he had, and essentially, the functions he performed that creates the fiduciary relationship. I don't think it just breaks on whether or not you are officially an officer. You made the argument it arises under state law and not under the consulting agreement. I'm sorry, I didn't hear you. Your argument is that it arises under state law, the fiduciary duty, not under the consulting agreement. Right? If the claims arise under state law. The fiduciary duty. I apologize, I'm having trouble hearing you. You made the argument that the fiduciary duty is one that's arising under state law, not under the consulting agreement. Correct. Is that right? That's correct. But we don't reach that if we conclude that it wasn't jurisdiction. Correct, because he was not a signator as has been evidenced. Additionally, the types of actions he's claimed with are tortious and would not come under the arbitration agreement anyway. So can you address the question of how we interpret it, Section 16, and whether we take the strict textualist approach to what kind of order we're reviewing, or we take the more functionalist approach of some sister circuits? I think that either way you go, quite frankly, we still prevail. Currently this court has not taken a position. I know in the Harrison matter, which Judge McKee was a part of the panel in that case, there was some language which essentially said we don't have to get to that question because that was the Lemon Law case with the arbitration provision. But what the court said in that opinion was linguistically a motion to dismiss is very, very different, obviously, from a motion to compel arbitration. Essentially the court, I believe, was saying in dicta at that point that here's what we want. If you want your arbitration, you need to ask for us to compel arbitration. And here's why I think the court got to that reasoning. Counsel, my adversary, has taken the position that what we have here is a situation where you file a motion to dismiss saying this should be an arbitration. So what you're really asking is to ignore all the other trigger mechanisms and have the court order you to arbitration. But I think we're in a situation, what truly happened here, is where the arbitration clause can be both a sword and a shield. They didn't want to trigger arbitration. What they did was they had a situation where the lawsuit was filed, so they then said, we'll claim the contract arbitration prevents the lawsuit from going forward, but we won't compel the arbitration. So, therefore, they can't get to us. I don't get that. If I'm the district judge and I have a motion to dismiss based on arbitration, I would grant the motion. I mean, one thing you could do, I should say, is grant the motion and send it to arbitration. That's what you could do, but that's what I'm saying. That's why they didn't specifically ask to go to arbitration, because they didn't really want to be there from a factual perspective. But practically, as Judge Greenaway poses, it happens frequently the district courts dismiss the case in favor of arbitration. Correct. So, given the public policy in favor of arbitration and taking a liberal approach, why should we take a stricter interpretation of the statute when we could take one like some of our sister circuits where the district courts simply have to look a little deeper into the papers that were filed and see if it plainly requests arbitration or raises the requirement of arbitration under the contract? As a policy perspective and as a contractual matter, the parties need to ask for the relief they want from the court. These are not unsophisticated attorneys that were involved in this matter. I don't understand your point. If you say in a motion to dismiss, Your Honor, I want to dismiss this because we have an arbitration clause and we should be in arbitration. There's nothing equivocal about that, and there's nothing obtuse about that. I mean, everybody knows once that is written that that is the objective. So, I'm not sure I understand your point. Well, and I apologize if I did not explain it clearly. What essentially I'm trying to say was I think happened in this case and what I think has happened in other cases when people fail to ask for the arbitration, they're not going to ask for the arbitration if there's litigation they can prevent by saying, oh, there's an arbitration clause, the court doesn't have jurisdiction. Because even the way they did phrase it in their motion for summary judgment, they requested any issues that Devin has with Davida's performance must be arbitrated in Switzerland under the CITO CARE arbitration clause. They didn't say we want to go to arbitration. They didn't say we demand this be transferred to arbitration. They were trying to use it as a sword and a shield, hoping the court would dismiss it for lack of jurisdiction and not order it because they would have asked for it if they could have. What's the advantage of doing that? If it's not dismissed, it doesn't go to arbitration. Here's the advantage of that. We're suing them for an excess of $7 million or so. If the court says we're not going to hear it because we have jurisdiction and they don't compel the arbitration, they're there as long as we sit on our rights. But if we then compel the arbitration, then it goes. But the point is, then they can claim, if it goes to arbitration, all of these issues with respect to the personal claims that aren't part of the contract, the fiduciary, and the individual claims against Davida, they would then turn around and claim we're not part of the arbitration. So it's a strategy. And some of these, the court held, were not arbitrable. Correct. So I think that that's... Assuming that you're not successful in the jurisdictional question, for a moment, why should we rule in your favor on the waiver question when you didn't bring it up in the district court? I think the court has identified the issues. The Hawksworth factors are what I would respectfully request this court examine closely. They are the six non-exclusive factors that guide prejudice in this inquiry. And that's the test, was there prejudice, as has been already pointed out by Your Honor. The six factors are timeliness or lack thereof of motion to arbitrate, which the court has already illustrated. It's now five years, over five years. We had 17 months of discovery, 26 depositions. The second factor is extent to which party-seeking arbitration has contested the merits of the opposing party claims. They've contested the merits every step of the way. The third issue is whether the party-seeking arbitration informed its adversary. Fourth is the extent to which the party-seeking arbitration engaged in the non-merits motion practice. All the way down to the sixth, which deals with to the extent they've engaged in practice. And I think perhaps it's important to note not all six of these factors have to be present for there to be deemed a waiver. The courts have found that it just depends based on the circumstance and the context of the particular case. Did you raise waiver in the district court? I believe we did, Your Honor. I can't quite frankly sit here and tell you chapter and verse, to be honest. Let's assume for a moment you didn't. Are you SOL now? We may be. It's the afternoon. I can be colloquial. We may be because I'm not going to sit here and be disingenuous with this court. Please don't. We've claimed that they have not raised it. I am saying that I don't know, but that's a possibility. Yes, Your Honor. But I think that's also a decision this court could make without us having to even raise it. You mean the fact that you didn't preserve it? Correct. You could find sua sponte, certainly, that there was a waiver, and it's certainly inequitable for us to have to proceed in this fashion when examining the six factors of the Hollingsworth case. You've argued that that waiver point is jurisdictional. What's the authority for it being jurisdictional? I guess what I'm contending is that because of the lack of time that has occurred, quite frankly, and all the expense and everything that has come up to this point, that the matter should not go to arbitration because they could have moved for jurisdiction and appealed right after the motion to dismiss stage. But isn't that really an equitable stop or a laches kind of argument? Yes. And as came up in our last argument, to even get to that point, if it's not jurisdictional, we'd need to determine that we had jurisdiction. Correct. That's correct. And we're relying on the issues of the non-signatories and the type of tortious actions that occurred and the fact that obviously they're not directly related to the contract. There were things, for instance, that occurred that are in the record that there's eight hospital contracts that there were interferences with, it's alleged. None of those eight hospitals are part of the contractual agreements. None of those agreed to the binding. And all of this is tied up in the one issue. What's the prejudice to you by not having had them label the motion to dismiss and summary judgment as compelling arbitration? Is it just time and money? It is the time, delay, the expense, the availability of witnesses five, six years later. It is also, quite frankly, how the case is presented. Has anyone passed away? Is there any evidence that's no longer available? For instance, our CFO, Mr. Lutz, who was there at the time, is no longer with us. He's a key witness. I don't know the access we would have to him, how that would be. But even the presentation of the case in an arbitration, I may bring in five witnesses because you're looking at two or three days where you're not developing a whole record with 26 depositions. And I don't want to say insignificant depositions, but you're certainly making different decisions when you are arguing to a lawyer or panels or judges or retired judges than you are the different kind of nuggets you're looking for in factual discovery that you may play in front of a jury because you're playing to a different audience. So we are severely prejudiced in that respect in how we got to portray our case. Thank you. Thank you very much, Your Honors. I wanted to be respectful. My understanding, Judge Greenway, is that SOL stands for statute of limitations. Is that correct? Okay. So the arbitrability part of this case is really decided by the judge.  The judge is the judge. The judge is the judge. Most clearly by Your Honors, Judge Greenway's decision in Griswold against Coventry, which was an August of 2014 decision. In that case, which was structurally similar in that there was an allegation of tortuous conduct in a situation where there was also a contract, Your Honor wrote, in determining that the claim was not arbitrable in the Griswold case, Your Honor wrote, Here, appellees' amended complaint sufficiently alleged their injury without mention of the purchase agreement. The purchase agreement is the contract with the arbitration provision. Put simply, appellees do not allege breach of the purchase agreement. They allege fraud antecedent to the purchase agreement. The situation we have here is completely the opposite. Everything relates to the contract. In paragraph, the contract with the arbitration provision. In paragraph 26 of the amended complaint, the plaintiffs wrote, Pursuant to the terms of the Second Amendment, DeVita was appointed COO for Devin Robotics. Well, that means that his entire presence, everything he said or did, when he was functioning as the COO of Devin Robotics, was pursuant to the Second Amendment, which, of course, is part of the initial contract that has the arbitration provision. So that means that the claims all arise, intimately relate to the contract. If we don't make the finding that you are hoping that we make with regard to Mr. DeVita being an affiliate, I presume questions of jurisdiction and waiver are resolved? I'm sorry, Your Honor, I don't understand the question. You said that the reason that the agreement applies to Mr. DeVita is because he's an affiliate. If we disagree with you on the notion that he's an affiliate, where does that put you? Oh, well, there are other reasons why it applies to him as well, and that is also in the Griswold case, Griswold sites. Is it an NPO? No, I think it's presidential, Your Honor. It's a very nice opinion. What Griswold says after addressing Pritzker against Merrill Lynch and DuPont against Roe and Polank, which are sort of together, those three cases form most of the law on this issue, it says that a person can be brought into an arbitration if he is, and this is from Griswold, akin to a signatory. That's the test according to Griswold and DuPont against Roe and Polank. So in this case, if anybody, if the court doesn't want to accept that he is an affiliate under the literal terms of the contract, he is akin to a signatory. He is an agent, just like the brokers were in Pritzker against Merrill Lynch. The whole case arises from a dispute among these companies from this contract, which had four amendments that went on for years. The essence of the claim by Devin, even though it sued Mr. Davidma personally, its claim is that Health Robotics Italy, the company that was the employer of Mr. Davidma, breached its contracts or contract with Devin Robotics. If you read the complaint, the complaint is about the contract, unlike the case in Griswold where the complaint was not about the contract. The heart of it is the complaint by the Devin parties that Health Robotics, through its agent Mr. Davidma, drew a $5 million letter of credit, which triggered all kinds of financial difficulties with Devin. That's what the case is about. It all arises from the contract. Mr. Davidma is either an actual party by virtue of the definition or is akin to a signatory because he was right in the heart of it. Mr. Goldman, I have a final question for you on jurisdiction under Section 16A1. Again, in terms of the construction of it, which is an issue of first impression in our circuit, right? So in Lloyd v. Hovesna, which was a Third Circuit case in 2004, which we did not in advance ask the parties to be prepared to address, so it may be that you're simply not sufficiently familiar with it to address, but there we took, as did the interpretation of Section 3, we held it the plain language. That statute afforded no discretion to the district court to dismiss the case and took an approach of very strict statutory construction using Congress's literal words as to what was required under the FAA. Why shouldn't we provide some clarity here on this sort of alternate jurisdictional basis for determination of the case to address the question of whether absent an application to compel, there's jurisdiction over an interlocutory appeal? I am not specifically familiar with the Lloyd case, but under the statute the reference to Section 3 says there is an interlocutory appeal may be taken from in order refusing a stay of any action under Section 3 of the title. Now, it follows to me from that statutory language that if a party requests that a case be stayed so that an arbitration can proceed someplace else, that's appealable. Now, whether you call it a motion for a stay, a petition for a stay, an application for a stay, makes no difference either logically or under the statute because the statute says refusing a stay. So by any means, if a party moved in court or in any way raised the issue to a court and said, Your Honor, this case should be stayed because there's an arbitration provision. If that request were denied, it would be appealable. The answer to the second part of your question is that the court could, consistent with certain statutory construction principles, the court could rule and say if you don't make a motion, if a defendant doesn't make a motion for arbitration titled an application under 206 to compel arbitration or titled a petition under Section 4 of this title to order arbitration, then you can't appeal it. Then the party can't appeal it. I submit that under the cases in this jurisdiction in the circuit, which don't address that specifically, and in other jurisdictions, don't require that kind of a statutory construction on this issue because the principle is if you request arbitration, no matter what the name is, as long as it's clear that you're requesting arbitration, then you can appeal the denial of that request within 30 days.  Thank you.